IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHINITA FREEMAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 20-3155 |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,[1] | : | |
| | : | |
| Defendant. | : | |

**Henry S. Perkin, M.J.**                                                                                       **September 15, 2021**

## MEMORANDUM OPINION

Plaintiff, Shinita Freeman ("Plaintiff"), brings this action under 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g) by reference, to review the final decision of the Commissioner of Social Security ("Defendant"), denying her claim for supplemental security income ("SSI") provided under Title XVI of the Social Security Act ("the Act"). 42 U.S.C. §§ 1381-1383f. Subject matter jurisdiction is based upon section 205(g) of the Act. 42 U.S.C. § 405(g). Presently before this Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review (ECF No. 12); Defendant's Response to Request for Review of Plaintiff (ECF No. 15); and Plaintiff's Brief in Reply to Defendant's Brief in Response to Plaintiff's Request for Review (ECF No. 18). For the reasons that follow, Plaintiff's Request for Review will be **DENIED** and the decision of the Commissioner of Social Security be **AFFIRMED**.

### I.   PROCEDURAL HISTORY

Plaintiff protectively filed her application for SSI on August 4, 2017, alleging disability since January 1, 2017. (Record at 18, 89, 154-62.) Plaintiff claims disability as a result of

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

herniated discs in the back, nerve damage on the left side, and muscle spasms. (Record at 177.) The state agency initially denied Plaintiff's claims on October 31, 2017, and she filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Record at 18, 93-97.) A hearing was held on January 29, 2019 at which Plaintiff, who was represented by counsel, appeared and testified. (Record at 32-61). Katherine Young, a vocational expert ("VE"), also appeared and testified at the January 29, 2019 hearing. (Record at 51-58.)

On March 14, 2019, after having considered evidence of Plaintiff's impairments, the ALJ issued an unfavorable decision in which he found that Plaintiff, given her age, education, work experience, and residual functional capacity ("RFC"), was capable of performing jobs that existed in significant numbers in the national economy. (Record at 15-27, Finding Nos. 1-9.) Thus, the ALJ concluded that Plaintiff was not disabled. (Record at 27, Finding No. 10.) Plaintiff timely requested review of the ALJ's decision on March 9, 2019. (Record at 149-52.) The Appeals Council denied Plaintiff's Request for Review on April 20, 2020. (Record at 1-6.) Thus, the ALJ's decision, dated March 14, 2019, became the final decision of the agency. (Record at 1.)

Plaintiff initiated a civil action on June 26, 2020, seeking judicial review of the Commissioner's decision that she was able to perform a significant number of jobs in the national economy, and thus was not entitled to SSI. (ECF No. 1.) Plaintiff subsequently filed her Brief and Statement of Issues in Support of Request for Review on January 28, 2021. (ECF No. 12.) The Commissioner filed her Response on March 2, 2021, and Plaintiff filed her Reply on April 22, 2021. (ECF Nos. 15, 18.)

## II. LEGAL STANDARD

The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision. Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision. *Richardson v. Perales*, 402 U.S. 389, 407 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Substantial evidence is "more than a mere scintilla of evidence," but may be less than a preponderance of the evidence. *Jesurum v. Sec'y of U.S. Dep't*

*of Health and Human Serv.*, 48 F.3d 114, 117 (3d Cir. 1995). Therefore, the issue before this Court is whether there is substantial evidence to support the Commissioner's final decision that Plaintiff is  "not disabled" and is capable of performing jobs that exist in significant numbers in the national economy.

Though the Court's duty is "to scrutinize the record as a whole to determine whether the conclusions reached [by the ALJ] are rational," *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979), the Court may not undertake *de novo* review of an ALJ's decision, nor may it re-weigh the evidence of record.  *Williams*, 970 F.2d at 1182 (A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder."); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).  However, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of disability.  *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). This Court's review of legal questions presented by the Commissioner's decisions is plenary. *Schaudeck v. Comm'r of Social Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [him] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1).  Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows:  (1) if the claimant is currently engaged in substantial gainful employment, he will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," he will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether he can perform work he has done in the past despite the severe impairment - if she can, she will be found not disabled; and (5) if the claimant cannot perform his past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether he can perform other work which exists in the national economy.  *See id.* § 404.1520(b)-(f).

*Schaudeck,* 181 F.3d at 431-32.  The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience and residual functional capacity. *Poulos v. Comm'r of Social Sec.*,

474 F.3d 88, 92 (3d Cir. 2007).  RFC is defined as the most an individual can still do despite her limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

## I. BACKGROUND

Plaintiff, born on April 16, 1971, was forty-five years old at the time of her alleged disability onset date. (Record at 25, 184.)  She obtained a GED certification but had no additional vocational training, licenses, or certificates in any field. (Record at 25, 42, 178.)  With respect to work history, Plaintiff testified that she last worked as motor coach operator in 2007, but had to stop working after two slip-and-fall accidents on the job. (Record at 42.)

During the hearing that took place on January 29, 2019, Plaintiff's counsel summarized her alleged impairments as: lumbar degenerative disc disease primarily at L5-S1 and obesity. (Record at 39-40.) Plaintiff's counsel further explained that her degenerative disc disease causes severe radicular pain in the left lower extremity which, as a result, requires Plaintiff to walk only with the assistance of a cane. (Record at 39.)

In response to questioning from the ALJ, Plaintiff explained that she "cannot sit too long," "cannot stand too long," and "cannot walk too long" due to the pain in her lower back and leg. (Record at 43-45.) Plaintiff further testified that she cannot sit up straight, but rather, has to "be sitting twisted, bent a certain way in order for [her] to try to sit as comfortably as [she] can for a short period of time." (Record at 44.) In regards to walking, Plaintiff can walk "probably a quarter of [one football field] but then has to sit down and relax due to pain "shooting through [her] back." *Id.* Plaintiff can, at most, stand in one place for "three-and-a-half, four minutes" before experiencing pain in her left leg. (Record at 45.)

Plaintiff testified that, while she receives injections for her pain management, they only last six to eight days before she is "back to being in pain again." (Record at 46.)  Further, Plaintiff takes both prescribed pain medication and powdered aspirin for her pain, but these medications only relieve the pain for "about two hours at most." (Record at 47.)

Plaintiff resides with her husband, three children, two grandchildren, and two nephews. (Record at 41.) With respect to household activities, Plaintiff testified that she is unable to do chores  around the house, but can help with some light meal preparation such as cutting vegetables while sitting. (Record at 48.) Most of Plaintiff's time is spent during the day reading and talking to her grandchildren while either lying down in her bed or in a reclining chair.

(Transcript at 49.) Though Plaintiff does not take public transportation, she testified that she does drive a car. (Transcript at 41.)

The VE then classified Plaintiff's past work as motor coach operator as medium, semi-skilled work with an SVP level of 4. (Record at 52.) The ALJ then described to the VE a hypothetical individual of Plaintiff's age and education, limited to: a range of sedentary work, frequent use of foot controls, frequent reaching, no climbing of ropes ladders or scaffolds, no kneeling, or crawling, occasional performance of postural activities, and occasional exposure to unprotected heights and extreme temperatures. (Record at 52.) The ALJ asked whether such individual could perform the job of a motor coach operator to which the VE responded that he or she could not. *Id.*

Considering all of limitations in the hypothetical above, the ALJ asked the VE if there are sedentary unskilled jobs that such an individual could perform. (Record at 60.) The VE opined that there are a number of jobs that would meet that hypothetical including: a parking lot cashier, representing 390,000 jobs in the national economy, an order clerk food and beverage, representing 180,000 jobs in the national economy, and a survey worker, altogether representing around 400,000 jobs in the national economy. (Record at 52-53.) The ALJ then asked whether these jobs could still be performed if the hypothetical individual were further limited to requiring the use of a cane for ambulation while retaining use of the free hand for lifting and carrying to which the VE responded in the affirmative. (Record at 53.) However, if such individual needed to be able to alternate between sitting and standing at will while remaining at the workstation, they could not perform the work of a survey worker. *Id.*

In response to questioning by Plaintiff's attorney, the VE testified that an individual who could sit no more than four hours total in an eight hour workday and stand and/or walk no more than two hours total in an eight-hour workday could not perform any work in the national economy. (Record at 54.) Additionally, if an individual needs someone to accompany them in the workplace, the VE testified that scenario would require an accommodation rather than be normal in competitive employment. (Record at 57.) Finally, in response to counsel's questioning, the VE opined that being off task 15% of the workday would preclude an individual from performing any of the prior jobs she mentioned. (Record at 57-58.) She added that being absent greater than one two days per month on a regular basis would exceed any employer's tolerable limit for keeping a person employed. (Record at 58.)

In addition to reviewing the transcript of the administrative hearing, this Court has independently and thoroughly reviewed the 398-page administrative record.  We will not further burden the record with a detailed recitation of the facts.  Rather, we incorporate relevant facts in our discussion below.

## II. ALJ DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

Plaintiff's alleged disability involves an inability to work because of lumbar degenerative disc and obesity. (Record at 39-40.)   The ALJ, however, proceeded through the sequential evaluation process and determined that Plaintiff was not disabled as a result of her impairments. (Record at 15-30.)

At step one, the ALJ initially noted that Plaintiff had not engaged in any substantial gainful activity since August 4, 2017,the application date. (Record at 20, Finding No. 1.)

At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar spine disorder and obesity. (Record at 20, Finding No. 2.)

At step three, the ALJ determined the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and therefore, could not establish her entitlement to benefits on that basis. (Record at 21, Finding No. 3.)

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RCF") to perform sedentary work with the following limitations: "she requires the use of a cane for ambulation but retains the use of the free hand for lifting and carrying.  She is limited to frequent use of foot controls and frequent reaching.  She can never climb ladders, ropes, or scaffolds.  She can never kneel or crawl.  She can perform other postural activities no more than occasionally.  She can occasionally be exposed to unprotected heights and extreme temperatures. (Record at 19-20, Finding No. 5.) In view of the testimony of the VE,  the ALJ found that Plaintiff was unable to perform her past relevant work experience as a motor coach operator. (Record at 25, Finding 5.)

However, the ALJ found at step five that, considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. (Record at 26, Finding No. 9.) These jobs included "order clerk", representing 180,000 jobs in the national economy and survey worker,

representing 400,000 jobs in the national economy. (Record at 26-27, Finding 9) Thus, a finding of "not disabled" was appropriate. (Record at 27.)

In her Request for Review, Plaintiff asserts that the ALJ erred because: (1) the ALJ rejected the opinion of the treating orthopedic physician for erroneous reasons, (2) the ALJ rejected the opinion of the consultative physician for erroneous reasons, and (3) the ALJ erroneously omitted some of Plaintiff's credibly established limitations from the RFC and hypothetical  (ECF No. 12 at 6-12.)  The issues before this Court, however, are limited to whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence and whether the ALJ applied the proper legal standards in evaluating a claim of disability.

This Court has reviewed the various sources of medical evidence, the submissions of counsel, and the testimony at the ALJ hearing.  Based on this Court's independent and thorough review of the record and for the reasons that follow, we find that the ALJ has provided appropriate and adequate support for his decision.  Accordingly, we conclude that the ALJ's decision is supported by substantial evidence of record and Plaintiff's Request for Review is denied.

## III.     DISCUSSION

Ultimately, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the additional limitations described in his decision. (Record at 21-25, Finding No. 4.) Plaintiff contends that the ALJ erred by rejecting the opinions of the treating orthopedic physician and the consultative physician for erroneous reasons.  (ECF No. 12 at 6-12.) She further maintains that the ALJ erroneously omitted some of Plaintiff's credibly established limitations in the hypothetical, and the vocational expert testimony in response therefore did not constitute substantial evidence of other work which Plaintiff could perform. (ECF No. 12-14.) Defendant responds that the ALJ appropriately found the opinions of the treating orthopedic physician unpersuasive because it was unsupported by the treatment notes, and the opinion of the consultative physician somewhat persuasive as it was generally well supported by the records available at the time he rendered his opinion. (ECF No. 15 at 3-8.) Defendant adds that the hypothetical was not defective because it did not include all of the limitations suggested by the treating orthopedic physician and the consultative physician. (ECF No. 15 at 9.)

7

### a. Substantial Evidence Supports the ALJ's Evaluation of the Orthopedic Physician's Opinion

Plaintiff argues that the ALJ erred by rejecting the opining of the treating orthopedic physician, Dr. Anthony Palmaccio. (ECF No. 12 at 6.) Specifically, the Plaintiff maintains that the ALJ improperly substituted his own lay opinion for that of a medical expert. *Id.* at 6-10 Plaintiff further contends that Dr. Palmaccio's opinion was supported by his own treatment records in addition to the other medical records reviewed by the ALJ. *Id.*

When formulating a claimant's RFC, an ALJ must base his or her assessment upon all relevant evidence, including medical records, medical source opinions, and a description of the claimant's own symptoms. 20 C.F.R. § 404.1545(a). The ALJ is required to review medical evidence submitted by both "acceptable medical sources" and other healthcare providers who are not "acceptable medical sources." *Grasty v. Astrue*, 661 F. Supp. 2d 515, 521 (E.D. Pa. 2009) (citing 20 C.F.R. §§ 404.1502, 416.912).   The ALJ retains the sole discretion to determine the relative weight to be accorded to these available medical opinions as the ALJ must make the ultimate disability and RFC determinations. *Id.*; *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

Because Plaintiff applied for benefits on or after March 27, 2017, the ALJ applied a new set of regulations for evaluating medical evidence that differs substantially from prior regulations.  On January 18, 2017, the agency published revisions to its regulations regarding the evaluation of medical evidence which became effective on March 27, 2017. *See* 20 C.F.R. § 404.1520c; 416.920c (2017); *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132 (Mar. 27, 2017)). (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017).  The regulations no longer use the term "treating source"; instead, they use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. *See* 20 C.F.R. §§ 404.1520c, 416.920c (2017). Following notice and comment, the "treating source rule" that could require deference to treating source opinion evidence was not retained. 82 Fed. Reg. at 5853.

In evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."

8

20 C.F.R. § 404.1520c(a) (2017).  While the agency adjudicator must articulate his or her consideration of all medical opinions, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must "give good reasons" for the weight given a treating source opinion).  The ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: Supportability; Consistency; Relationship with the claimant (which includes) (i) Length of the treatment relationship, (ii) Frequency of examinations, (iii) Purpose of the treatment relationship, (iv) Extent of the treatment relationship, (v) Examining relationship, (4) Specialization and (5) Other factors. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c) (2017).

The ALJ will explain how he or she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2) (2017). The ALJ must explain in his or her decision how persuasive he or she finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. *Id.* The ALJ may, but is not required to, explain how he or she considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017).  One or more medical opinions or prior administrative medical findings from the same medical source are considered together using the above factors and the adjudicator is not required to articulate how he or she considered each opinion or finding. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (2017).

The ALJ treated the orthopedic physician's opinion appropriately. On January 30, 2019, Dr. Palmaccio completed a medical assessment of Plaintiff's ability to do work-related activities. (Record at 354-56.)  In this evaluation, Dr. Palmaccio opined that, in an eight hour workday, Plaintiff was capable of standing and walking less than ten minutes and sitting less than ten minutes. *Id.*  He further indicated that Plaintiff could lift and carry less than ten pounds on an occasional or frequent basis, and could only sit ten minutes or stand ten minutes before having to change position to relieve discomfort. *Id.* Dr. Palmaccio noted that Plaintiff would need the opportunity to shift at will from sitting or standing/walking, and would need to lie down at

9

unpredictable intervals every ten to fifteen minutes during a work shift. *Id.* Plaintiff's limitations, Dr. Palmaccio opined, were supported by his findings of low back syndrome with radiculopathy, knee pain, and lumbar arthropathy. *Id.* With respect to exertional limitations, Dr. Palmaccio noted that Plaintiff could occasionally twist and stoop but never crouch, climb stairs, or climb ladders. *Id.* Dr. Palmaccio indicated that the following physical functions were affected by her impairments: reaching, handling, feeling, and pushing/pulling. *Id.* Regarding environmental restrictions, Dr. Palmaccio wrote that Plaintiff could never be exposed to extreme heat or cold, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards (machinery, heights, etc.). *Id.* Finally, Plaintiff would, on average, be absent from work more than three times per month due to her physical impairments. *Id.*

In accordance with the new regulations governing this claim, the ALJ did not find this opinion persuasive because it was not supported by Dr. Palmaccio's treatment records nor was it consistent with the medical evidence as a whole, particularly the mostly normal diagnostic imaging studies. (Tr. 25.) 20 C.F.R. § 404.1520c.  With respect to Dr. Palmaccio's treatment records, the ALJ noted that Plaintiff had received treatment from his practice "from early 2016 up to the present." (Record at 23.) The ALJ summarized Dr. Palmaccio's treatment records as follows:

> The records note the claimant to complain of pain in her back, neck, and left knee, as well as occasional headaches.  Reviews of systems are all negative except for the claimant's complaints of back or neck pain, or occasionally headaches. Physical examinations show some abnormalities, including pain in the spine, reduced range of motion at times, positive straight leg raise (SLR) tests on the left side, and some other abnormalities.  The claimant has received oral pain relievers and anti-inflammatory medications, including hydrocodone, cyclobenzaprine, naproxen, and ibuprofen B1F; B2F; B5F).  The claimant has also received lumbar epidural steroid injections (ESI) and lumbar facet blocks on multiple occasions (B1F/20, 24, 27; B5F/40-5).  During visits in September and October 2017, and July and October 2018, the claimant reported that ESIs had helped to relieve her pain and other symptoms (B5F/5, 15, 35, 37).  During a February 2018 visit, it was noted that the claimant's pain was controlled by medications (B5F/27).

(Record at 23.)  After review of Dr. Palmaccio's treatment records, it is clear that the ALJ did not substitute his lay opinion for that of Dr. Palmaccio, but appropriately found that the opinion, which would render Plaintiff incapable of performing any type of full time work, was unsupported by Dr. Palmaccio's treatment record.  Specifically, the records cited by the ALJ do demonstrate that Plaintiff reported that ESIs had helped to relieve her pain, and, in February

10

2018, Dr. Palmaccio noted that the pain in Plaintiff's lower back and left leg was "controlled by meds." (Record at 313, 323, 335, 343, 325.)

The ALJ also adequately explained that Dr. Palmaccio's opinion was not consistent with the medical records as a whole, particularly the mostly normal diagnostic imaging studies. As cited to by the ALJ, an MRI of the Plaintiff's lumbar spine from November 20, 2010 showed normal vertebral body heights and alignment, normal bone marrow signal, disc desiccation with loss of disc signal at the L5-S1 level, and minimal disc bulging at the T12-L1 and L5-S1 levels. (Record at 381-382.) Another MRI of the lumbar spine performed on December 2, 2009 revealed: a normal lumbar lordosis, normal alignment, slight disc desiccation at L5-S1 level, and almost imperceptible disc bulging at the L4-L5 and L5-S1 levels. (Record at 385-386.) While the ALJ notes that these diagnostic imaging studies were performed "well prior to the protective filing date," he also cites to the only recent diagnostic imaging study, performed in October 2017, in which the radiologist found "no significant bony abnormality" of the lumbosacral spine. (Record at 22, 308.) Lastly, while the ALJ writes that the examinations performed by Dr. Palmaccio have shown "some abnormalities," he cites to the internal medicine consultative examination performed on October 17, 2017 which indicated Plaintiff had full strength in her upper and lower extremities, full grip strength bilaterally, and range of motion within normal limits. (Record at 296-308.)

For these reasons, this Court finds that the ALJ acted in accordance with the Commissioner's new, governing regulations and Third Circuit case law when he sufficiently explained why he found Dr. Palmaccio's opinion unpersuasive.

    **b. Substantial Evidence Supports the ALJ's Evaluation of the Consultative Physician's Opinion**

Plaintiff also challenges the ALJ's assessment of the opinion of Dr. Anthony Mackaronis, the consultative physician. Again, Plaintiff contends that the ALJ "has simply substituted his own lay interpretation of the medical evidence for the expert opinion of Dr. Mackaronis." (ECF No. 12 at 12.)

On October 17, 2017, Dr. Mackaronis completed a medical assessment of Plaintiff's ability to do work-related activities. (Record at 300-305.) Dr. Mackaronis opined that Plaintiff could lift and carry up to ten pounds frequently and up to twenty pounds occasionally. (Record at 300.) He further indicated that Plaintiff could only sit two hours, stand one hour, and walk one

hour without interruption. (Record at 301.) In an eight-hour workday, he wrote that Plaintiff could sit four hours, stand two hours, and walk two hours. *Id.* Plaintiff had no restrictions in either hand with respect to reaching, handling, fingering, feeling, pushing, or pulling, (Record at 302.) However, Dr. Mackaronis noted that Plaintiff could only occasionally operate foot controls with her left foot due to sciatica. *Id.* Regarding postural activities, Dr. Mackaronis indicated that Plaintiff could never climb ladders or scaffolds and occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. (Record at 303.) Plaintiff could also never be exposed to extreme cold or heat and only tolerate occasional exposure to unprotected heights. (Record at 303.) Lastly, Plaintiff was capable of: "ambulating without a wheelchair, walker, or 2 canes or 2 crutches," using standard public transportation, climbing a few stairs at a reasonable pace with the use of a single hand rail, preparing a simple meal and feeding herself, caring for her personal hygiene, and sorting, handling, and using paper/files. (Record at 305.) Plaintiff was unable to: perform activities like shopping, travel without a companion for assistance, and walk a block at a reasonable pace on rough or uneven surfaces. *Id.*

In his opinion, the ALJ found Dr. Mackaronis' assessment somewhat persuasive. The ALJ explained his reason reasoning for doing so as follow:

> Dr. Mackaronis opined that the claimant is limited to a range of sedentary work, with a total of 4 hours sitting and 4 hours of standing and walking in an 8-hour workday, along with a limitation to occasional use of the left foot, and additional postural and environmental limitations (B4F/10). The range of sedentary work is relatively well supported by Dr. Mackaronis' own examination, and is fairly consistent with [the] overall record. However, the limitation to sitting a total of 4 hours in an 8-hour workday is overstated, as is the limitation to occasional use of the left foot. Additionally, the limitations regarding the claimant's activities of daily living included in the report (B4F/12) are not consistent with Dr. Mackaronis' own examination or with the x-ray of the claimant's lumbar spine that was conducted after the examination (B4F/15.)

(Record at 25.)

This Court finds that the ALJ correctly evaluated Dr. Mackaronis' assessment pursuant to the new, governing regulations, and found that it was only somewhat persuasive as the limitations for sitting and using Plaintiff's foot were not supported by the record and the limitations regarding Plaintiff's activities of daily living were not consistent with Dr. Mackaronis' records. During the October 17, 2017 consultative examination, Dr. Mackaronis' wrote that Plaintiff had an antalgic gait and "appeared to be very uncomfortable and was constantly changing positions and standing up." (Record at 296-299.) However, he also wrote

that she was able to walk on her heels and toes, did not use her cane during the examination, and had a normal stance. *Id.* Dr. Mackaronis further noted that Plaintiff had full strength in her upper and lower extremities, full grip strength bilaterally, a range of motion within normal limits, no abnormalities in the thoracic spine, no evidence of musculoskeletal joint deformity, and stable joints. *Id.* As emphasized by the ALJ, an x-ray of the lumbosacral spine taken in conjunction with the examination also displayed no significant bony abnormality. (Record at 308.) This evidence undermines Dr. Mackaronis' opinion regarding Plaintiff's limitations and supports the ALJ's analysis of that portion of his opinion.

Altogether, the ALJ treated the medical opinions appropriately. Under the regulations in force at the time of Plaintiff's application, the ALJ was required to give no "specific evidentiary weight, including controlling weight, to any medical opinion." 20 C.F.R. § 416.920c(a). Instead, the ALJ was required to weigh "other medical evidence," including functionality opinions from treating physicians, *id.* § 416.913(a)(3), based on several factors, *id.* § 416.920c(c)(1)-(c)(5), with a focus on consistency and supportability, *id.* § 416.920c(a). Consistency and supportability are the only factors ALJs must address in their written opinions. *Id.* § 416.920c(b).

The ALJ set forth a clear and concise recitation of the medical evidence that he reviewed in making his decision, citing to evidence to support his weighing of the medical opinions. Because the ALJ properly addressed the medical opinions and accurately and reasonably cited substantial evidence to support his RFC, his opinion permits "meaningful judicial review." *Hernandez v. Comm'r of Soc. Sec.*, 89 F. App'x 771, 773–74 (3d Cir. 2004) ("The Commissioner need not undertake an exhaustive discussion of all the evidence . . . where we can determine that there is substantial evidence supporting the Commissioner's decision"). It is respectfully recommended that Plaintiff's claim should be denied.

   c. **Substantial Evidence Supports the ALJ's RFC Finding Presented in the Hypothetical to the VE**

In her final argument, Plaintiff contends that the ALJ's hypothetical to the VE omitted the limitations assessed by Drs. Palmaccio and Mackaronis. (ECF No. 12 at 13.) Because the ALJ's hypothetical failed to include these limitations, Plaintiff argues that the VE's response did not constitute substantial evidence that she could perform other work. *Id.* at 13-14.

In order for a VE's testimony to provide an appropriate basis for decision-making, the ALJ must present the VE with a hypothetical inquiry that "reflect[s] all of a claimant's

impairments that are supported by the record." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir.1984); *Wallace v. Secretary*, 722 F.2d 1150 (3d Cir.1983)). While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments. *Podedworny* 745 F.2d at 218 (citing *Tennant v. Schweiker*, 682 F.2d 707, 711 (8th Cir.1982)). Thus, to rely on a VE's testimony as substantial evidence to support the ALJ's decision, the hypothetical need only fairly set forth every *credible* limitation, not every *alleged* impairment. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir.2005).

For the reasons already discussed above concerning the ALJ's weighing of those two opinions, we find that the ALJ did not err in failing to include all of the limitations discussed in Dr. Palmaccio's and Dr. Mackaronis' assessments. The ALJ appropriately found that some limitations were not supported by the record, and thus, did not present them in a hypothetical to the VE. Accordingly, the ALJ was able to rely on the VE's testimony as substantial evidence.

## IV.     CONCLUSION

For the reasons set forth above, this Court finds that the ALJ's findings are supported by substantial evidence. Accordingly, Plaintiff's Request for Review is **DENIED**. An appropriate Order follows.

BY THE COURT:

 */s/ Henry S. Perkin*
HENRY S. PERKIN
United States Magistrate Judge